# Wade v. Oates.

### *Contest of Municipal Election.*

1. *Contest of elections*; *sufficiency of complaint.*—Under statutory provisions regulating election contests (Acts, 1892-93, p. 468), a complaint charging that if certain illegal votes cast and counted for contestee had been rejected, contestant would have received a majority, is not sufficient; it should be alleged that by subtracting the alleged illegal votes from the votes given to contestee, the number of legal votes received by contestee would be reduced to or below the number of legal votes received by contestant.

2. *Same*: *construction of statute*; *pleading and proof.*—Under said statute regulating election contests, in order to get the benefit of the defense that illegal votes were cast or legal votes rejected, it is not necessary that the contestee should file a special plea setting up the facts ; but the party complaining must give to the contestant ten days notice in writing, of the number of illegal votes, by and for whom given and at what precinct cast and the number of legal votes rejected, by whom and in what precinct offered ; and upon such notice being given, he can make the necessary proof to substantiate the defense under the general denial of the allegations of the complaint.

3. *Same*; *construction of town charter*; *board of election supervisors.*—Under a town charter providing that the mayor and aldermen shall declare the result of elections for the municipal offices, and that contests thereof shall be governed by the law regulating contests of election for the office of judge of probate, the mayor and aldermen in office at the time of the municipal elections constitute the "board of supervisors" mentioned in sub-division 1 of section 1 of the general Contest Act (Acts, 1892-93, p. 468), whose "mal-conduct, fraud or corruption" gives cause for contest.

[Wade v. Oates.]

4. *Power of inspectors; canvass by board; finding of lower court.*—
Under such charter, the inspectors appointed to hold the election
have substantially the same powers and duties as inspectors appointed
under general laws; and where the proof shows that the "board of
supervisors," to whom the returns were made recounted the votes,
ignoring the tally sheets kept by the inspectors, and reversed the re-
sult of the count by the inspectors, and that tickets had been changed
after the returns were made, producing this new result, a finding by
the circuit judge, before whom the contest was had, in favor of the
contestant, will not be disturbed.

APPEAL from the Circuit Court of Henry.

Tried before the Hon. M. E. MILLIGAN, Special Judge.

This was a proceeding instituted by the appellees
against the appellants, to contest the election of Mayor
and Aldermen of the town of Headland, Alabama. The
complaint was as follows:

"The plaintiffs, Wyatt S. Oates, W. J. Williams and
Joel B. Grant, complain of the defendants, William H.
Wade, B. H. King and R. C. Grice, that said defend-
ants did heretofore, to-wit, on January 10th, 1895, un-
lawfully usurp, hold, and now unlawfully hold the office
of mayor, and two members of the board of aldermen of
the town of Headland, Alabama, to which office of mayor
plaintiff Oates was legally and duly elected on the said
date, same being the time required by law for the elec-
tion of mayor and aldermen of the town of Headland,
and plaintiffs at said date were each a qualified voter of
said county and State, and were qualified to hold the
respective offices which they voted for at said date. That
said Wade, as mayor, and said King and Grice as alder-
men, corruptly and fraudulently withhold said office of
mayor and aldermen from the occupancy and enjoyment
of plaintiffs; and plaintiffs file this statement in writing
and make known to the court the following as their
grounds for contesting with defendants the right in and
to the offices which they respectively wrongfully with-
hold: Plaintiffs aver that they were duly and legally
elected to the respective offices they contest and that they
were kept from the occupancy and enjoyment of said
offices for and on account of, 1, illegal votes in that one
T. J. Pennington, Cæsar Ashley, Calvin Doster, and
many others who were disqualified from voting in said
election were allowed to vote, and said votes so illegally
cast were counted for said Wade for mayor, and for said

King and Grice for aldermen; and plaintiffs aver that if the votes so illegally cast and counted for defendants were rejected that plaintiffs would have secured a majority. ·2. Rejection of legal votes in that said defendants as the acting mayor and aldermen of said town unlawfully assumed the authority of a board of canvassers, and after the lawfully appointed board of managers had correctly canvassed and counted the votes polled at said election and reported the same to defendants, as mayor and aldermen, and the duty of said mayor and aldermen being merely to declare the result of said election and declare who were elected, they failed to perform this duty, but unlawfully and fraudulently assumed the authority of a canvassing board, and counted and canvassed the returns as lawfully made by the managers, and in making the said recount corruptly and unlawfully rejected a large number of legal votes cast for plaintiffs, and which, if counted, would have given plaintiffs a majority of the votes polled, and defendants, by other means, both corruptly and unlawfully changed the result of the vote as ascertained and reported by the board of managers from a majority for plaintiffs to a majority for themselves. 3. Mal-conduct, fraud and corruption on the part of defendants and others who acted as a board of supervisors in this : (a.) That said defendants and others acting as a board of supervisors fraudulently and corruptly disregarded the returns made by the lawfully appointed board of supervisors wherein said board ascertained that plaintiffs were elected, and assumed to recount the votes and falsely declared that defendants themselves were elected. (b.) That defendants, Wade and King, and one Watt Espy, after the board of managers had counted, canvassed the vote polled at the said election and returned the same to the acting mayor and aldermen, procured possession of the ballots and returns, and so changed them that the true and correct result of said election could not be ascertained, and after so changing and altering the said returns fraudulently and corruptly canvassed said returns and declared the result of the election as having given defendants a majority of the votes polled at said election. (c.) That said Wade was never the duly qualified mayor of said town, he having never been elected to said office nor appointed by the proper and authorized power, and that he had no right to per-

[Wade v. Oates.]

form the duties of mayor until his successor is elected and qualified. (d.) That the lawfully appointed board of managers having counted, canvassed, and reported the number of the votes polled at said election and whom cast for; the duty of the acting mayor and aldermen being, from the report of said managers to declare who were elected; and said mayor and aldermen unlawfully assumed the right and power to count the votes and canvass the returns and declare a result different from the result as shown by the board of managers. Wherefore plaintiffs bring this contest and pray that notice issue to said William H. Wade, B. H. King and R. C. Grice as required by law.'' There were several pleas, demurrers and other pleadings interposed, but it is deemed unnecessary to set them out in detail. The material facts of the case are sufficiently stated in the opinion.

Upon the hearing of all the evidence, the court rendered judgment declaring that the contestants were duly elected, and that they recover of the contestees the respective offices for which the election was held and the contest instituted. From this judgment the contestees appeal, and assigns as error the rulings of the trial court upon the pleadings, and the rendition of judgment in favor of the contestants.

EPSY & FARMER, for appellants.—The amended complaint of the defendants was insufficient, in that it failed to allege that they received a majority of the legal votes, cast at the election; and for this reason the demurrer thereto should have been sustained.—*Thompson v. Judge,* 9 Ala. 339.

The provisions of the election law are mandatory; and the proof is without conflict that at the election at which the contestants claim to have been elected, there were many of the requirements of the statute that were not carried out.—*Price v. Lush,* 9 L. R. Ann. 467; *People v. Board of Canvassers,* 14 L. R. A. 624; *School Directors of Beaver Township,* 27 L. R. A. 234; *Lamar v. Dillon,* 22 L. R. A. 124.

The mayor and council declaring the result of the election, entitled the contestees *prima facie* to the offices which they held, until they were ousted by some legal proceedings instituted by persons having a superior right

to the offices for which the contest was instituted.—
*Moulton v. Reid,* 54 Ala. 320.

T. A. McDANIEL, *contra.*—Contest is the proper
manner of trying title to an office of a municipal cor-
poration.   The act chartering the town of Headland
provides that elections held under this act may be con-
tested in the same manner as is or may be provided by
law for contesting an election to the office of the judge
of probate.—Acts, 1892-93, p. 894.   The special remedy
provided for the contest of municipal elections, excludes
the common law remedy by information in the nature
of *quo warranto.*—High on Extraordinary Legal Reme-
dies, 617; *Ex parte Reid,* 50 Ala. 441; *Parks v. Owens,*
100 Ala. 648.

The board of managers had exclusive authority to
count the vote and ascertain the result of the election
and no power, but a court of law could go behind the
returns made by them and declare a result different from
that ascertained by them.   The act chartering the town
of Headland, (Acts, 1892-93, p. 894,) directs the mayor
and aldermen to appoint managers of elections, and the
duties of the managers of election under this act, are
identical with the duties of inspectors of elections under
the general election law.—Code of 1886, Part I, Title 6,
§ § 381-86; *Leigh v. O'Bannon,* 69 Ala. 264.   The act re-
ferred to directs the mayor and aldermen to declare the
result of the election and declare who were elected offi-
cers, and their duty extended no further than declaring
the result ascertained by the managers.   They had no
power to recount and canvass the vote.   The duty of
the mayor and aldermen in respect to elections under
this act is identical with the duties of supervisors under
the general election law.—Code of 1886, § § 387-88.   Their
duty in the premises was purely ministerial, one of cal-
culation merely, and their act in going behind the
returns and declaring a result different from that ascer-
tained by the managers was *coram non judice,* and
wholly void.—*Leigh v. O'Bannon,* 69 Ala. 264; *Echols
v. Dunbar,* 56 Ala. 131; 6 Amer. & Eng. Encyc. of Law,
307, 313.

In the absence of express authority, the mayor and
council of a municipal corporation have no power to
count the vote and correct the returns, and when given

this express power, and specifically made sole judges of the election returns, their finding makes only a *prima facie* case for those in whose favor they find. If any irregularity had been committed by the managers, the mayor and aldermen sitting as a board of supervisors, had no power to correct the same, but their only remedy would be to contest.—*Echols v. Dunbar, supra ;* Dillon Mun. Corp., 284, § 202, and notes; *Dikey v. Reid,* 78 Ill. 261.

Appellants are estopped from setting up any irregularity of the election under which they are holding their respective offices.—*People v. Waite,* 70 Ill. 25; *Ferguson v. Landram,* 5 Bush (Ky.) 230 ; 7 Amer. & Eng. Encyc. of Law, 22.

HEAD, J.—This is a contest of an election of Mayor and Aldermen of the town of Headland, Ala.

The first ground of contest specified in the complaint was insufficient. It should have stated, as provided by sub-division 3 of section 3 of the "Act to provide for and regulate contests of elections to offices, State and county, herein named," (Acts, 1892-93, 468), that the alleged illegal votes given to contestees, if taken from them, would reduce the number of their *legal* votes to or below the number of *legal* votes given to contestants. It was not enough to say the contestants would have received a *"majority."* That majority may, also, have consisted of illegal votes, in whole or in part. But, when we come to the merits of the case, this seems to be a useless feature injected into the complaint, for what purpose we do not know, since, though the court on demurrer sustained the ground, on the point mentioned, there was no pretense on the trial, on the part of contestants, that any illegal votes were cast for contestees except the general contention that all the votes cast at the election were illegal. The allegations, therefore, serve no purpose but to unnecessarily incumber the record.

The contestees undertook to set up by pleas, that there were no legal votes cast at the election, at all, for any one ; and in consequence, contestants were not and could not have been elected. This is predicated upon the allegation that the mayor did not provide the tickets to be used as ballots at the election, as required by the

election law, (Acts, 1892-93, p. 837, §§ 14 *et seq*., § 47) ; and also that none of the voters had been registered. The objections do not go to the validity of the election, except as its invalidity results from the fact that every vote cast for any one was illegal. The contest statute, under which this proceeding is instituted, prescribes how the inquiry touching the casting of illegal votes, shall be inaugurated and tried. Section 2 of that statute (Acts *supra*, p. 468) provides that "no testimony must be received of any illegal votes, or the rejection of any legal votes, in any contested election, unless the party complaining thereof has given to the adverse party notice in writing of the number of illegal votes, and by whom given, and for whom given, and at what precinct or voting place cast, or the number of legal votes rejected, and by whom offered, and at what precinct or voting place, which he expects to prove on the trial. Such notice must be served personally, or left at the residence, or usual place of business of the adverse party, at least ten days before the taking of the testimony in reference to such votes." Unless the question is raised in accordance with these provisions, the court will not, on a contest under the statute, enter upon any investigation of the character of the votes cast or rejected—whether they were legal or illegal. In this case, there was no pretense of a compliance with these provisions. In order to get the benefit of the defense that illegal votes were cast, or legal votes rejected, the contestee is not required to file a special plea setting up the facts. He may give the required notice and make the necessary proof, under a general denial of the complaint. Indeed, no special pleadings of the contestees were necessary or contemplated by the statute, and they served no useful purpose in this proceeding. It was the purpose of the legislature to provide a simple and expeditious method of determining who were really elected to the public offices when such questions are made the subject of contests before the courts, and we will not permit the efficiency of the remedy to be impaired by unnecessary and refined technical pleading, which tends to obscure and thwart the merits of the controversy, and which are involved in the general denial. The complaint must set forth the jurisdictional facts prescribed by the statute, in order to confer jurisdiction of the sub-

ject matter upon the court. This done, a general denial by the contestee is all the further pleading that is necessary. The objections made to the election, in question, by the other special pleas all relate to mere irregularities—disregard of directory provisions—not affecting the number of votes received by the respective parties. We will, therefore, not further notice the special pleas, replications or rejoinders.

The questions then are, upon the evidence : (1) Who received the greater number of votes? (2) Is the charge of mal-conduct, fraud or corruption sustained?

1.   The evidence abundantly sustained the finding of the trial judge that the contestants were elected.

2.   The town charter provides for elections of mayor and aldermen, annually, and declares that "all boards of managers of said corporation election shall be designated by the mayor and board of aldermen." Further, that "the mayor and aldermen shall declare the result of elections and declare who are elected officers ; and in case of a tie, shall determine who shall be mayor and aldermen. * * * * * That any election held under this act may be contested in the same manner, as is or may be provided by the laws of the State for the contests of the election of judge of probate, and that so far as practicable apply to the contests of all elections held under this act."

Under these provisions, the mayor and aldermen, in office, at the time of the election, come within the designation, "board of supervisors," found in sub-division 1 of section 1 of the contest act, whose "mal-conduct, fraud, or corruption" gives cause of contest. In this instance, contestee, Wade, was mayor, and contestees, King and Grice, with two others, were aldermen ; and they were candidates for re-election. As the draughtsman of the charter, we suppose, thought no such occurrence as a mayor or alderman becoming a candidate for re-election would ever happen, no provision was made for such a contingency ; so the contestees being in, they sat upon their own cause, declared themselves elected, and continued in. The election had been held by a board of managers or inspectors, in part appointed by the mayor and aldermen, and in part by substitutes for appointees. Though the provisions of the charter, as to the machinery for holding such elections, are meagre

[Wade v. Oates.]

and indefinite, the purpose is disclosed that they shall be held by inspectors appointed by the mayor and aldermen, or substitutes taking their places, according to the rules and regulations, as far as applicable, of the general election laws of the State governing general elections, intending to confer upon such inspectors substantially the same duties as conferred by such general laws, and upon the mayor and aldermen, substantially, the duties of boards of supervisors, under the general laws. The inspectors who held this election, did so in the manner prescribed by the general law as contained in the Code of 1886, omitting the new provisions of the election law of 1893. They opened the polls at the proper time, received the ballots, kept the usual poll lists, closed the polls properly, counted the votes, keeping tally sheets, ascertained the number of votes received by each person voted for, and returned a box containing the ballots and tally sheets to the mayor and aldermen. Whether the tally sheets were certified or signed, in any way, by the inspectors, does not appear. Though there was nothing more important in the cause than these tally sheets, they seem to have commanded only an incidental mention in connection with the action of contestees, and that was that one witness saw them at the count made by the mayor and aldermen. The testimony of inspectors proved that correct tally sheets were kept. Several days after the election, the mayor and aldermen, including contestees, to whom the box was delivered, proceeded to recount the votes, ignoring, so far as appears, the tally sheets. Their count of the ballots reversed the result of the count made by the inspectors. For instance, the inspectors (and their tally sheets so showed) gave Oates, for mayor, 52 votes and Wade 40, whereas, the count made by Wade and others, gave Wade 52 and Oates 40. The evidence is satisfactory that tickets had been changed after the box left the inspectors, producing this new result. There was no direct evidence to show who did it. The contestees and others who were shown to have had any connection with the box, testified to their entire innocence in the premises. It would be impossible to form a safe and reliable judgment, upon the evidence reproduced in writing before us, as to who is responsible for the changes made in the ballots, and our conclusion is that as the circuit

judge had the witnesses before him and the consequent increased advantages of weighing properly their testimony, we will not disturb his finding.

Affirmed.